UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER SCOTT, § | |
| Plaintiff § | |
| § | |
| § | |
| V. § | Civil Action 4:16-cv-1938 |
| § | |
| § | |
| SYNDER'S-LANCE, INC. § | |
| Defendant § | *Jury Trial Requested* |

## PLAINTIFF'S ORIGINAL COMPLAINT

**1.** This action for Employment Discrimination arises under Title VII of the Civil Rights Act of 1964 for Employment Discrimination. Jurisdiction is conferred by Title 42 of the United States Code, section 2000e-5.

**2.** This action for Employment Discrimination arises under Title 42 of the United States Code, section 1981. Jurisdiction is conferred by Title 28 U.S.C. Section 1331.

**3.** This Texas state action for Negligent Hiring and Supervision arises under the Texas Common Law. Supplemental Jurisdiction is conferred by 28 U.S.C. Section 1367.

**4.** Venue is proper in this district under 28 section 1391 because a substantial part of the events or omissions giving rise to all claims occurred in this district.

### Parties

**5.** The plaintiff is Jennifer Scott who is a resident of Harris County.

**6.** The defendant is Snyder's-Lance, Inc, a foreign corporation organized and existing under the laws of the State of North Carolina, whose principal office is located at 13515 Ballantyne Corporate Place, Charlotte, North Carolina 28277, Mecklenburg County, North Carolina. In addition, Defendant has an office in Texas and employs Texas residents at this

1

office. The office is where a substantial part of the events and/or omissions occurred. The office location is 7108 Old Katy Road, Suite 120, Houston, Texas 77024.

7.  Under Federal Rule of Civil Procedure 4(h)(1)(A), which incorporates Federal Rule of Civil Procedure 4(e)(1), service may be effectuated by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located. In this case, the district court is located in Texas, therefore, Texas laws and rules for effectuating service control. Under these rules and laws, including Texas Business Organizations Code §5.255(1), service can be effectuated by serving the defendant's vice president, Rick D. Puckett, or Defendant's president, Carl E. Lee, Jr. at the address in ¶ 6.

## Facts

8.  A copy of the initial charge that Plaintiff filed with the Equal Employment Opportunity Commission is attached as Exhibit A-1. The charge was filed on October 8, 2014. It was filed within the 180 day time period of the incidents giving rise to this action.

9.  On March 30, 2016, the Equal Employment Opportunity Commission mailed notice of Plaintiff's right to sue letter to Plaintiff. Plaintiff has filed this letter with this complaint. It is attached as Exhibit A-1. This action has been filed within the 90 day window of Plaintiff's receipt of notice of her right to sue.

10. Plaintiff is a member of a racial minority as Plaintiff is African American. Plaintiff is a woman, as well. Plaintiff is one of a few, if not the only, woman and black employee employed at Defendant's location at 7108 Old Katy Road, Suite 120, Houston, Texas 77024.

11. Plaintiff, Jennifer Scott, obtained a Bachelor degree from the University of Southern Mississippi in 2005.  She majored in Business Marketing. She obtained a Master of Business Administration degree from Kaplan University in 2013.

**12.** She worked at Frito Lay as a District Sales Manager from 2005 to 2011.

**13.** Plaintiff was recruited to work for Defendant by some of the defendant's executives and/or other officers.

**14.** Plaintiff began her employment with Snyder's-Lance, Inc., the defendant, in August, 2011, as an Area Sales Manager.

**15.** In the fall of 2012, a position for Regional Sales Manager became available at Snyder's-Lance. Plaintiff applied for this position as it came with a raise in pay. In addition, the position was very similar to the position that Plaintiff had with Frito Lay, a position she maintained for six (6) years before being recruited by Defendant.

**16.** Much to Plaintiff's dismay, she was not even considered for the position, despite her strong qualifications and experience working in a closely related position at Frito Lay. She was not even granted an interview. Instead, a white male was selected for the position, a male to whom she was more qualified to hold the position.

**17.** As a result, Plaintiff contacted the Regional Vice President to inquire as to why she was not even granted an interview or even considered for the position. The Regional Vice President responded that he was not aware that she was qualified.

**18.** In October of 2012, not to long after getting passed over for the position referenced in ¶ 15, Plaintiff experienced a severely hostile event while employed with Defendant. Plaintiff was in a company meeting that was ending. During these moments, Chris Saunders, a district manager and a white male stated, "We should hang a noose in the warehouse."

**19.** Plaintiff was flabbergasted, intimidated, and frightened as she was the only black person in attendance at the meeting and the only woman in the room full of predominantly white men.

**20.** Such a statement carries significance because of the hostile, hateful, history of the United

States concerning the brutal oppression of black Americans through slavery and the harsh, oppressive laws and attitudes that were prevalent in America after the Civil War. One act of domestic terrorism aimed toward black Americans during this dark time was that of "lynching." Lynching involved hanging blacks by a specially tied rope, called a noose. Many black Americans died at the hands of lynching. Making such a statement in the presence of the only black employee at the meeting conjures up images of one of the worst acts of human rights violations the world has ever seen. And the gesture of making the statement, one that is appallingly inappropriate in a workplace environment, in any environment for that matter, is one of extreme hostility, extreme condescension, and extreme indifference to the person whose genetic ancestry suffered at the hands of this most heinous act.

21.     Out of sheer nervousness, fear, and shock, Plaintiff asked, "What are you all talking about?" Upon completion of her question, several employees in the room laughed. They thought the "noose" comment was funny.

22.     Barry Whitaker, another district manager for Defendant and a white male, replied with another racially hostile statement, "You better be glad that he did not say a white sheet and noose." His statement was in reference to the domestic terrorist organization known as the Klu Klux Klan. This organization came into being as a direct result of the black slaves being freed by the civil war. This organization terrorized and killed thousands of black Americans and many white Americans who fought for black American civil rights along with many black Americans.

23.     And still yet another district manager who is a white male and in attendance at the meeting, Keith Baird, said to Plaintiff, Jennifer Scott, after she returned to her office, "Hey, Jennifer. To add icing to the cake, you should meet me in Jasper, Texas to do our work on next Tuesday." He laughed after he made the statement.

**24.** This was yet another racially hostile, appallingly inappropriate statement to make at any time in the workplace. The statement was made even more inappropriate and hostile given the racially hostile statements that were made to Plaintiff during the meeting. Jasper, Texas is the town where James Byrd, Jr., a black American, was brutally murdered by three white males (two known to be white supremacists) simply because he was black. This statement is made even more hostile and inappropriate when one considers just how he was savagely murdered. He was dragged to death behind a pickup truck with a rope tied to only his neck. At some point during this barbaric brutalization, his head became detached from his body. His head came off. For a coworker to invoke this disgusting and hostile image of fear and death, then direct it to a coworker who shares the same race as the murdered victim, is unfathomable, uncivilized, and incredibly condescending, hostile, and disrespectful.

**25.** Plaintiff reported the incident to Josh Murray, the zone sales leader. He gave lip service to Plaintiff that he would correct the problem, but no apologies were issued to Plaintiff. To the best of Plaintiff's knowledge, no corrective measures were taken.

**26.** During the time subsequent to this incident, Defendant employees directed all sorts of hostile, inflammatory, and condescending names toward Plaintiff in her presence. She was routinely called the "help" in reference to the fact that during the Jim Crow period, several black females were maids for white families. Disney even made a movie about this truth. It was called "The Help." There were many more racially based insults leveled toward Plaintiff during this period of a few years.

**27.** Plaintiff repeatedly reported these instances of hostility and intimidation to Josh Murray. And repeatedly, Josh Murray and Defendant ignored and failed to address these highly problematic issues.

**28.**     These attacks began to manifest themselves as actual verbal attacks on Plaintiff's work performance. For instance, Barry Whitaker, during a meeting with several employees in attendance, said that Plaintiff was "worthless and not doing her job."

**29.**     While this comment would be a very mean thing to say in front of other employees if it were true, the fact that this comment was not at all true makes the comment much more disturbing and hostile. Plaintiff has never received an unsatisfactory performance evaluation. She has received praised from other managers of Defendant. She has received nothing but good, solid performance evaluations.

**30.**     During the course of her employment, some employees and managers resented Plaintiff because of the numerous reports she made about the hostile work environment. Instead of addressing and correcting the problem, some employees of Defendant made the problem worse by increasing resentment toward Plaintiff. At one point, Defendant looked for ways to get rid of her. She was uniformly referred to by many employees of Defendant as a trouble maker.

**31.**     During or around the middle of 2014, Plaintiff applied for two job openings with Defendant. Just as with the previous job opening referenced in ¶ 15, these openings for Key Account Manager came with a pay increase for Plaintiff.

**32.**     Plaintiff's immediate supervisor, Director of Sales, James Arriola, recommended or selected Plaintiff for this position as the positions were identical. Although Plaintiff was granted an interview for one of the positions, she was not granted an interview for the other one. And even though the Director of Sales selected her to hold one of these positions as he believed she was fit and qualified to handle the job duties, upper management frowned on his choice of Plaintiff and vetoed his decision, denying Plaintiff a promotion for which she was most certainly qualified.

**33.** Once again, a white male was selected for both Key Account Sales Manager positions. One of the men who was selected over Plaintiff for this Key Account Sales Manager position was a white male by the name of Nathan. Nathan was originally hired (when he first became employed by Defendant) in the same job title and description that Plaintiff initially held when she was first hired by Defendant. This position was Area Sales Manager. Nathan was hired after Plaintiff was hired. In addition, Plaintiff was asked to train and did train Nathan for the Area Sales Manager position. Plaintiff was more qualified and had more experience than Nathan for the Key Account Sales Manager. Yet, she was passed over for both Key Account Sales Manager positions in favor of white males, including Nathan.

**34.** Once again, the ugly narrative and description used to describe Plaintiff as a trouble maker confronted her once again. When Plaintiff inquired about why she was passed over, James Arriola informed her that no one employed by Defendant had anything good to say about Plaintiff because she was seen as a trouble maker and a pariah to the corporation of Defendant. Resentment against Plaintiff had run amok simply because she reported instances of intimidating, highly insulting instances of workplace hostility directed towards her.

**35.** In September of 2014, as Plaintiff was loading her company van, Jaun Martinez, an employee of Defendant, approached Plaintiff and Steve Temple, a person whom Plaintiff was having a discussion with, and greeted both of them. After greetings were exchanged absent any hostility on Jennifer's part, Jaun exclaimed to Steve, in reference to Plaintiff, "Black Bitches." Such behavior exhibited by Jaun toward Plaintiff was customary for Plaintiff to have to endure while employed at Defendant.

**36.** Plaintiff, once again, reported this incident to upper management. Although there were emails communicated to Plaintiff that something would be done to correct this appalling

7

behavior, nothing was ever done, just as nothing was ever done in all of the previous instances of reports Plaintiff made about hostile work environment incidents.

37. Shortly afterward this final incident, Plaintiff felt she had no choice but to leave Synder's-Lance. She resigned her position after coming to this determination.

## Count I. - § 1981 Violation in failure to promote in 2012

38. Title 42 Section 1981 confers the same right on all American citizens to make and enforce contracts as is enjoyed by white citizens.

39. Plaintiff is not a white citizen, but a black one.

40. Plaintiff had an existing contract with Defendant and sought to have it modified or made new by seeking a promotion during 2012.

41. Plaintiff was qualified for the position and better qualified than the white male who was given the job, although Plaintiff was not even considered for the job.

42. Plaintiff was prohibited from exercising her ability to make and enforce contracts in the way a white citizen does under Section 1981. She was denied the promotion because of her race.

43. As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

    e. lost opportunity past and future

    f. loss of enjoyment of life past and future

    g. harm to professional reputation past and future

**44.** Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant impeded Plaintiff's ability to make or enforce contracts with malice or reckless indifference.

### Count II. - § 1981 Violation in failure to promote in 2014

**45.** Title 42 Section 1981 confers the same right on all American citizens to make and enforce contracts as is enjoyed by white citizens.

**46.** Plaintiff is not a white citizen, but a black one.

**47.** Plaintiff had an existing contract with Defendant and sought to have it modified or made new by seeking a promotion during 2014.

**48.** Plaintiff was qualified for the position and better qualified than the white male (all of them who were offered the positions, and definitely more qualified than Nathan) who was given the job, although Plaintiff was not given either job.

**49.** Plaintiff was prohibited from exercising her ability to make and enforce contracts in the way a white citizen enjoys under Section 1981. She was denied the promotion because of her race.

**50.** As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

    e. lost opportunity past and future

    f. loss of enjoyment of life past and future

    g. harm to professional reputation past and future

**51.** Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant impeded Plaintiff's ability to make or enforce contracts with malice or reckless indifference.

### Count III. - § 1981 Violation in constructive termination of Plaintiff

**52.** Title 42 Section 1981 confers the same right on all American citizens to make and enforce contracts as is enjoyed by white citizens.

**53.** Plaintiff is not a white citizen, but a black one.

**54.** Plaintiff had an existing contract with Defendant and was constructively terminated by Defendant.

**55.** Plaintiff was qualified for her job that she had maintained all of the years employed with Defendant. She never received an unsatisfactory performance evaluation. All of her evaluations indicated that she was competent, if not proficient, in the performance of her job duties.

**56.** Plaintiff was prohibited from exercising her ability to make and enforce contracts in the way a white citizen does under Section 1981. She was constructively terminated because of her race. Defendant allowed and/or caused workplace conditions to become so hostile and intimidating for Plaintiff, she had to resign her position.

**57.** As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

    e. lost opportunity past and future

    f. loss of enjoyment of life past and future

      g. harm to professional reputation past and future

**58.** Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant impeded Plaintiff's ability to make or enforce contracts with malice or reckless indifference.

### Count IV. – Title VII Disparate (harassing) treatment because of race

**59.** Plaintiff suffered racial harassment and insults at the hands of Defendant because of her race.

**60.** Defendant treated Plaintiff differently and with more hostility than similarly situated employees who did not share the same race as Plaintiff.

**61.** As a result of Defendant's violation, Plaintiff has suffered the following injuries:

      a. mental anguish past and future

      b. humiliation past and future

      c. lost wages past and future

      d. inconvenience past and future

      e. lost opportunity past and future

      f. loss of enjoyment of life past and future

      g. harm to professional reputation past and future

**62.** Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant allowed a hostile environment to foster and/or created a hostile environment for Plaintiff because of her race. Defendant did so with malice or reckless indifference.

### Count V. – Title VII Disparate (harassing) treatment because of gender

**63.** Plaintiff suffered gender harassment and insults at the hands of Defendant because of her gender.

**64.** Defendant treated Plaintiff differently and with more hostility than similarly situated employees who did not share the same gender as Plaintiff.

**65.** As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

    e. lost opportunity past and future

    f. loss of enjoyment of life past and future

    g. harm to professional reputation past and future

**66.** Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant allowed a hostile environment to foster and/or created a hostile environment for Plaintiff because of her gender. Defendant did so with malice or reckless indifference.

### Count VI. – Title VII Disparate (denying promotion in 2012 because of race) Treatment

**67.** Plaintiff is not a white citizen, but a black one.

**68.** Plaintiff had an existing contract with Defendant and sought to have it modified or made new by seeking a promotion during 2012.

**69.** Plaintiff was qualified for the position and better qualified than the white male who was given the job, although Plaintiff was not even considered for the job.

**70.** She was denied the promotion because of her race.

**71.**   As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

    e. lost opportunity past and future

    f. loss of enjoyment of life past and future

    g. harm to professional reputation past and future

**72.**   Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant denied promotion to Plaintiff because of her race and did so with malice or reckless indifference.

### Count VII. – Title VII Disparate (denying promotion in 2014 because of race) Treatment

**73.**   Plaintiff is not a white citizen, but a black one.

**74.**   Plaintiff had an existing contract with Defendant and sought to have it modified or made new by seeking a promotion during 2014.

**75.**   Plaintiff was qualified for the position and better qualified than the white males who were given the jobs.

**76.**   She was denied the promotion because of her race.

**77.**   As a result of Defendant's violation, Plaintiff has suffered the following injuries:

    a. mental anguish past and future

    b. humiliation past and future

    c. lost wages past and future

    d. inconvenience past and future

      e. lost opportunity past and future

      f. loss of enjoyment of life past and future

      g. harm to professional reputation past and future

**78.**   Plaintiff seeks punitive damages in an amount to properly penalize Defendant for its misconduct and to deter such wrong doing in the future. Defendant denied promotion to Plaintiff because of her race and did so with malice or reckless indifference.

**Count VIII. – Texas Common law violation of Negligent Supervision and/or Hiring**

**79.**   Defendant had a duty to hire, supervise and train employees.

**80.**   Defendant breached that duty by not properly supervising, training, or hiring them. Inappropriate and illegal workplace behavior was directed towards Plaintiff as a result.

**81.**   As a result of this violation, Plaintiff has suffered the following injuries:

      a. mental anguish past and future

      b. humiliation past and future

      c. lost wages past and future

      d. inconvenience past and future

      e. lost opportunity past and future

      f. loss of enjoyment of life past and future

      g. harm to professional reputation past and future

**82.**   <u>Exemplary Damages</u>. Plaintiff's injury resulted from Defendant's actual malice or gross negligence, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003.

**Jury Demand**

**83.**   Jennifer Scott, demands a trial by jury on all issues triable as of right by a jury.

## PRAYER

**84.** Plaintiff respectfully prays that the Court award judgment in favor of Plaintiff for violation of Plaintiff's rights under Title 42 § 1981, Title VII of the Civil Rights Act of 1964, Title 42 ¶ 2000e-5, and the Texas common law claim of Negligent Supervision and/or Hiring and that the Court award the following:

    a. actual and consequential damages, plus interest

    b. punitive/exemplary damages

    c. attorney's fees and costs of court

    d. all other relief that justice may require

Respectfully submitted,

The Bozeman Law Firm

/s/ Marc Anson Bozeman
Attorney-In-Charge
Texas State Bar No. 24057044
Federal Bar No. 1533462
9950 Westpark Drive, Suite 320
Houston, Texas 77063
Telephone: (832) 741-7950
mb@bozemanlitigation.com

ATTORNEY FOR PLAINTIFF
JENNIFER SCOTT

# EXHIBIT A-1

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jennifer L. Scott<br>18015 Sheldon Pines<br>Spring, TX 77379 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2015-00086 | Jeremy Crosbie,<br>Investigator | (713) 651-4919 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Marina Guerra_ (signed for Rayford O. Irvin, District Director)

MAR 3 0 2016 (Date Mailed)

Enclosures(s)

cc:
Alfred Benoit
BENIOT LAW, PLLC
1776 Yorktown, Suite 350
Houston, TX 77056

Nicole Gardner
GARDNER SKELTON, PLLC
505 East Boulevard
Charlotte, North Carolina 28203

Lowell Keig, Division Director
TWC – Civil Rights Division
101 East 15th Street, Room 144-T
Austin, TX 78778-0001

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] EEOC | 460-2015-00086 |

Texas Workforce Commission Civil Rights Division _and EEOC_
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jennifer L. Scott | (713) 825-2092 | 10-26-1981 |

Street Address: 18015 Sheldon Pines, Spring, TX 77379

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SNYDERS LANCE | 500+ | (713) 692-8622 |

Street Address: 7108 Old Katy Road Ste 120, Houston, TX 77024

DISCRIMINATION BASED ON (Check appropriate box(es).)
[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-24-2014    Latest: 10-08-2014
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment on August 15, 2011, as an Area Sales Manager. On or about July 10, 2014, my position was eliminated after the company downsized. At the time, I agreed to take a demotion to a District Sales Manager position in lieu of accepting a severance package and separation because no other positions were currently available.

However, on or about September 15, 2014, I applied for a two separate Key Account Sales Manager positions. Both of the positions were essentially the same or a similar position that I worked in prior to the downsize. I was interviewed for one of the positions; however, I was not selected for either of them and advised by the Director of Sales (James Arriola) that I was not selected because upper management did not support his selection me.

I believe that I was not selected for either of these positions due to a protected activity complaint of racial harassment that I made to Karen Taylor and Dale Weckhorst on October 14, 2012. My

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Oct 08, 2014
Date — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
Oct 8, 2014

MARIA ESTHER GUERRA
MY COMMISSION EXPIRES
April 5, 2015

| EEOC Form 5 (11/09) | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>460-2015-00086 |
| Texas Workforce Commission Civil Rights Division | | and EEOC |
| *State or local Agency, if any* | | |

performance has always been outstanding and I am highly experienced in the positions that I applied for; however, the respondent chose not to select me for either position despite my qualifications and performance.

I believe that I have been subjected to retaliation after making a protected activity complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| Oct 08, 2014<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>OCT 8<br><br>MARIA ESTHER GUERRA<br>MY COMMISSION EXPIRES<br>April 5, 2015 |